**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO. SAG-25-203** |
| | * | |
| **JAMIE TAYLOR,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |

\*\*\*\*\*\*\*

## GOVERNMENT'S DETENTION MEMORANDUM

The United States of America, by and through undersigned counsel, hereby submits the following memorandum and moves for the detention of the Defendant, Jamie Taylor ("the Defendant"). For the reasons stated below, the government submits that this Court should hold a detention hearing because the case involves a "crime of violence," under 18 U.S.C. § 3142(f)(1)(A) or, in the alternative, involves the possession or use of a dangerous weapon under 18 U.S.C. § 3142(f)(1)(E). Further, the Court should detain the Defendant pending trial because "no condition or combination of conditions will reasonably assure the appearance of the defendant for future proceedings and "no conditions or combination of conditions will reasonably assure…the safety of any other person and the community." *See* 18 U.S.C. § 3142(e)(1).

## BACKGROUND

On July 14, 2025, the Defendant had his initial appearance on the Indictment charging him with one count of Assaulting a Federal Officer in Performance of Official Duty, in violation of 18 U.S.C. § 111(a)(1) and (b). The Government moved for detention following the Initial Appearance, which was challenged by the Defendant on the grounds that the offense charged does not qualify as a crime of violence under 18 U.S.C. § 3142(f)(1)(A). The Court ordered briefing,

to which the Government submits this memorandum in support of its position for detention of the Defendant.

## LEGAL FRAMEWORK

The Bail Reform Act, 18 U.S.C. § 3142(f), allows for pretrial detention in appropriate cases. Section 3142(f) provides that a hearing should be held, upon motion of the government, in specified circumstances. Under 18 U.S.C. § 3142(f)(1), a judicial officer "shall hold a hearing to determine whether any condition or combination of conditions…will reasonably assure the appearance of such person as required and the safety of any other person and the community," upon motion of the Government. The Government is limited as to which cases qualify.

Under § 3142(f)(1)(A), the Government can motion for a detention hearing in a case that involves "a crime of violence." The term "crime of violence" is defined as:

(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or

(C) any felony under chapter 77 [Peonage, Slavery, and Trafficking in Persons], 109A [Sexual Abuse], 110 [Sexual Exploitation and Other Abuse of Children], or 117 [Transportation for Illegal Sexual Activity and Related Crimes].

18 U.S.C. § 3156(a)(4).

In determining whether an offense constitutes a "crime of violence," courts "generally apply the categorical approach. Applying that approach, the principal question is 'whether the federal felony at issue always requires the government to prove – beyond a reasonable doubt, as an element of its case – the use, attempted use, or threatened use of force." *United States v. McDaniel*, 85 F.4th 176, 184 (4th Cir. 2023) (citing *United States v. Taylor*, 596 U.S. 845, 850 (2022)). Courts also must determine whether a statute is "divisible," meaning "when the

2

applicable statute creates multiple offenses, with certain defined offenses being categorically crimes of violence and others that are not." *Id.*  In such a case, if the statute is divisible, "a reviewing court…should apply the 'modified categorical approach." *Id.* (citing *United States v. Fuertes*, 805 F.3d. 485, 498 (4th Cir. 2015).  The "modified categorical approach searches beyond the applicable statute and 'looks to a limited class of documents…to determine what crime, with what elements, a defendant was convicted of.'" *Id.* (citing *Mathis v. United States*, 579 U.S. 500, 505-06 (2016)).  The approach can only be applied if "at least one of the categories into which the statute may be divided constitutes, by its elements, a crime of violence." *Id.* (citing *United States v. Cabrera-Umanzor*, 728 F.3d 347, 352 (4th Cir. 2013)).

Additionally, the Government can motion for a detention hearing in a case that involves "any felony that is not otherwise a crime of violence that involves…any other dangerous weapon…" 18 U.S.C. § 3142(f)(1)(E).  While the term "dangerous weapon" is not defined in the Bail Reform Act, the Fourth Circuit has held that "what constitutes a dangerous weapon depends not on the object's intrinsic character but on its capacity, given the 'manner of its use,' to endanger life or inflict serious physical harm." *United States v. Sturgis*, 48 F.3d 784, 787 (4th Cir. 1995). "Otherwise stated, an object becomes a dangerous or deadly weapon based on how it has been 'used or attempted to be used.'" *McDaniel*, 85 F.4th at 188.

Under 18 U.S.C. § 3142(g), the factors a court must consider in determining whether a defendant poses a danger to the community include:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence…;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

Under the Bail Reform Act, the Government may proceed by proffer. *See United States v. William*, 753 F. 2d 329, 331 (4th Cir. 1985) ("Evidentiary proffers are approved by 18 U.S.C. § 3142(f)"); *see also United States v. Vane*, 117 F.4th 244, 250-51 (4th Cir. 2024); *United States v. Hammond*, 44 F. Supp. 2d 743, 745 (D. Md. 1999). Furthermore, "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 18 U.S.C. § 3142(f).

## ARGUMENT

### I. The Court shall hold a detention hearing pursuant to 18 U.S.C. § 3142(f)(1).

As addressed below, the Court shall hold a detention hearing upon motion of the Government, provided certain criteria for a case are met. In this case, multiple criteria are met necessitating a detention hearing.

#### A. The Court shall hold a detention hearing because this case involves a crime of violence under 18 U.S.C. § 3142(f)(1)(A).

As addressed in 18 U.S.C. § 3142(f)(1)(A), the Court shall hold a detention hearing upon motion of the Government in cases that involve a "crime of violence." In applying the modified categorical approach, as addressed in *McDaniel*, this case satisfies the definition of a "crime of violence" under federal law. In that case, the defendant was charged in a single-count information with a violation of 18 U.S.C § 924(c)(1), use of a firearm in the commission of a crime of violence, alleging that he committed assault upon a United States Marshal, in violation of 18 U.S.C. § 111(b), after shooting at the Deputy Marshal while fleeing a theft. *McDaniel*, 85 F.4th at 180.

First, the Court found that 18 U.S.C. § 111 was a divisible statute because subsections (a) and (b) defined "two distinct criminal offenses for an assault upon a federal officer." *Id.* at 185

4

(citing *Mathis*, 579 U.S. at 518, 136 S.Ct. 2243; *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).  Specifically, the Court noted that subsection (a) defined "felony assault," which "requires a forcible assault," whereas the second "and most serious" offense in subsection (b) was "enhanced felony assault," which required both proof of a violation of subsection (a), "plus the use of a deadly or dangerous weapon." *Id.* (citing *United States v. Briley*, 770 F.3d 267, 273 (4th Cir. 2014)). .

Second, the Court found that while a violation of 18 U.S.C. § 111(a) does not, itself, constitute a crime of violence, § 111(b) does.  In coming to this determination, the Court found that a "crime of violence" is a "felony offense that 'has as an element the use, attempted use, or threatened use of physical force,'" and "the use of force in this context 'means violent force – that is, force capable of causing physical pain or injury to another person.'" *Id.* at 185 (citing *Johnson v. United States*, 559 U.S. 133, 140 (2010)).  Because § 111(b) includes the use of a "deadly or dangerous weapon," the Court found that this would satisfy the force requirement of a crime of violence under 18 U.S.C. § 924(c). *Id.* at 188.

In the instant case, the Defendant is charged with attacking a United States Postal Service letter carrier by stabbing and attempting to stab him with a knife, in violation of 18 U.S.C. § 111(b).  As articulated in *McDaniel*, a violation of 18 U.S.C. § 111(b) constitutes a "crime of violence," as defined in federal law.  Thus the Government satisfies the requirements of 18 U.S.C. 3142(f)(1)(A).

    **B. In the alternative, the Court shall hold a detention hearing because the case is a felony that involves the possession or use of a dangerous weapon pursuant to 18 U.S.C. § 3142(f)(1)(E).**

As noted above, while a "dangerous weapon" is not defined in Title 18 of the U.S. Code, it has been addressed in case law.  The Supreme Court, in *McLauglin v. United States*, 476 U.S. 16, 17-18 (1986), noted that Courts should conduct a "multi-factored inquiry which emphasizes

5

the capacity of the instrument to instill fear or to inflict harm." In that case, the Supreme Court found that an unloaded handgun used during a bank robbery constituted a dangerous weapon since display of the gun would incite fear in the average citizen and thereby create a risk of a violent response. *See McLaughlin*, 476 U.S. at 18.

In this case, the Defendant is alleged to have used a knife to attack a United States Postal Service letter carrier. As highlighted in *McDaniel*, whether a weapon is dangerous is based on the object's "capacity, given the manner of its use." *McDaniel*, 85 F.4th at 188. In the instant case, the Defendant not only used a deadly and dangerous weapon but also caused bodily injury to the victim. Thus, even if this Court were to not consider 18 U.S.C. § 111(b) to be a crime of violence, the Government has still met the requirements of 18 U.S.C. § 3142(f)(1)(E) because the knife used by the Defendant to attack the victim was a dangerous weapon under the statute.

**II.   The Defendant should be detained because under the factors listed in 18 U.S.C. § 3142(g), there is no condition or combination of conditions that will reasonably assure the appearance of such person as required and the safety of any other person and the community.**

In this case, an examination of the § 3142 factors demonstrates that the defendant should be detained pending trial.

**1. The Nature and Circumstances of the Offense, Including Whether the Offense is a Crime of Violence**

On June 11, 2025, officers with the Baltimore Police Department responded to the 3100 block of Strickland Street in Baltimore, Maryland after receiving a report of a stabbing. Upon arrival, the officers spoke with Victim-1, a United States Postal Service letter carrier, who informed them that the Defendant attacked him with a knife, causing injuries to his finger and elbow. Victim-1 informed the police that while delivering mail, the Defendant accosted him outside of the Defendant's house, accusing him of not being a real letter carrier. The victim stated

that the Defendant announced that he was going to go inside and get a knife. Victim-1 continued on his route when he was confronted again in the front yard of a neighboring house, whereby the Defendant began to attack him with the knife, causing a cut to Victim-1's finger. Victim-1 attempted to flee and fell, scraping his elbow in the process. The Defendant proceeded to throw the knife at Victim-1, where it fell into the yard on the ground. The Defendant attempted to flee, whereby Victim-1 grabbed him because he believed the Defendant was attempting to get another weapon to attack him with. Neighbors who were witnessing the attack then stepped in to stop the attack and break apart the parties.



*Victim-1 with blood on his shirt*



*Scrape on Victim-1 elbow*


*Cut on Victim-1's Hand*


*Knife used in the assault*

Law enforcement at the scene interviewed multiple witnesses who observed the assault. One witness stated that he observed the Victim-1 delivering mail when he was confronted by the Defendant, who accused him of not being a real letter carrier. He stated that Victim-1 attempted to tell the Defendant that he was delivering mail, showing him the mail and his uniform, when the Defendant went inside and came back out with a knife and began swinging the knife at Victim-1. He said the Defendant threw the knife at Victim-1, after which Victim-1 grabbed the Defendant to prevent him from fleeing. Additionally, multiple other witnesses stated that they heard the Defendant yelling at Victim-1 and announce that he was going to go inside and get a knife, observing the assault afterwards. Further, numerous witnesses, including the Defendant's mother, stated that the Defendant was high on PCP[1], with the victim's mother saying he "blacked out."

---

[1] PCP, or phencyclidine, is a Schedule II controlled substance.

## 2. Weight of the Evidence

The evidence in this case is strong. The Defendant's actions were observed by multiple witnesses at the scene, who were able to corroborate Victim-1 statement of what happened during the assault. The knife was recovered from the front yard of one of the residences in the 3100 block of Strickland Street and injuries to Victim-1 were visible, including cuts to his finger and elbow, along with blood on his shirt.

## 3. History and Characteristics of the Person

The Defendant's criminal history, while dated, is lengthy and includes violent offenses and controlled substance convictions.

In 1996, Maryland Case No. 296096019, the Defendant was convicted of assault, being sentenced to approximately two years of incarceration. The Defendant violated probation four times for this offense, ultimately being sentenced to another 13 months in prison collectively for the multiple violations.

In 2000, the Defendant was convicted of Controlled Dangerous Substance: Inhale Harmful Substance, being sentenced to six months incarceration, all suspended. The Defendant again violated probation three times for this offense, being sentenced to approximately an additional seven months collectively for the multiple violations.

Also in 2000, the Defendant was convicted of possession of marijuana and possession of drug paraphernalia, being sentenced to one year incarceration. The Defendant also violated probation on this offense.

In another 2000 conviction, the Defendant was found guilty of Controlled Dangerous Substance: Inhale Harmful Substance. In this case, he was sentenced to six months incarceration,

all suspended.  He violated probation twice for this offense, being sentenced to an additional seven months incarceration collectively, in combination with his previous offense above.

In 2002, the Defendant was found guilty of Controlled Dangerous Substance: Unlawful Possession, and was sentenced to four days incarceration.

In 2003, the Defendant was found guilty of Resisting Arrest, being sentenced to two months and 29 days, time served for this offense.

In 2004, the Defendant was again found guilty of Resisting Arrest, being sentenced to 30 days incarceration.

In 2005, the Defendant was found guilty of Controlled Dangerous Substance: Unlawful Possession, and was sentenced to four months incarceration.

In 2011, the Defendant was found guilty of Disorderly Conduct, being sentenced to 60 days incarceration, 59 days suspended, with credit for one day of time served.

Accordingly, the facts of the current case and the Defendant's prior convictions suggest that the Defendant cannot stop engaging in violence, is a dangerous person, a habitual drug offender, and has been repeatedly unable to comply with previous conditions of release. The Defendant's release pending trial, given his criminal history would be a serious danger to the community.

### 4. The Nature and Seriousness of the Danger to the Community in the Event of the Defendant's Release

There is a real danger to the community in the event of the Defendant's release pending trial and a lack of surety that the Defendant would attend trial or future proceedings if released. The Defendant, by all accounts, is a habitual drug offender and violent person.  Furthermore, the Government has significant concerns in light of the statements the Defendant made to the U.S. Probation Officer in the Pretrial Services Report where he stated that he has no substance abuse

history, despite his multiple convictions for controlled substance offenses and statements from the witnesses at the scene, including his own mother, that he was under the influence of PCP at the time of the assault of Victim-1.

Additionally, the Government also points to the conduct of the Defendant during the Initial Appearance on July 14, 2025. The Defendant was disruptive in court and showed an inability to comply with simple instructions which required multiple interventions from the Court and the United States Deputy Marshals to control the Defendant's actions. The Defendant repeatedly questioned the validity of the proceedings, loudly voicing his displeasure to the Court and to members in the Gallery.

Further, the Government was made aware by the Postal Inspector involved with escort and detention of the Defendant of multiple threats that the Defendant made to the Postal Inspector at the Courthouse during and after the proceedings. First, during the recess in between the Initial Appearance and argument regarding the Detention Hearing, while in the United States Marshals spaces, the Defendant told the Postal Inspector, "'I swear on my children, when I get out of here, I am going to come find you." After the Initial Appearance, the Defendant again threatened the Postal Inspector, stating, "I should spit on your motherfucking ass.'

This, combined with the facts of this case and the Defendant's background, demonstrates a clear threat to the safety of the community if the Defendant were to be released pending trial and raises significant concerns of the Defendant's presence at trial or future proceedings if released.

## **CONCLUSION**

    For the reasons set forth above, the Government respectfully submits that no condition or combination of conditions will protect the community and assure the Defendant's presence at trial and requests that the Defendant be detained pending trial.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

_____/s/_____
Patrick Rigney
Special Assistant United States Attorney